KENNECOTT COPPER CORPORATION,
Utah Copper Division, Plaintiff,

v.

The INDUSTRIAL COMMISSION of
Utah and Bill Bilanzich, Defendants.

No. 15939.

Supreme Court of Utah.

June 21, 1979.

Parsons, Behle & Latimer, James B. Lee, Erie V. Boorman, Jr., Salt Lake City, for plaintiff.

Michael W. Park, Cedar City, Robert B. Hansen, Atty. Gen., Frank V. Nelson, Asst. Atty. Gen., Salt Lake City, for defendants.

CROCKETT, Chief Justice:

Kennecott Copper Corporation seeks reversal of a workmen's compensation award made to defendant Bill Bilanzich on May 5, 1978, for an injury to and disability of his left wrist which resulted from a fall while in the course of his duties at plaintiff's workings near Magna four years earlier, in March of 1974.

The defense asserted by Kennecott below and the issue presented on this appeal is that the claim was barred by the three-year statute of limitations contained in Sec. 35–1–99, U.C.A.1953, which in pertinent part provides:

. . . If no claim for compensation is filed with the Industrial Commission *within three years from* the date of the accident *or the date of the last payment of compensation,* the right to compensation shall be *wholly* barred.

Mr. Bilanzich's narrative as to the essential facts is that following the accident he began to suffer pain and stiffness in his wrist. He could not fix an exact day of his injury, but upon the basis of the evidence, the Commission found that it had occurred on or about March 8, 1974. His distress continued so that on September 23, and again on October 2, 1974, he went to the plaintiff's company physician Dr. Gubler for treatment. The difficulty continued and in

January 1975, he went to an orthopedic specialist, Dr. Lamb and was given some shots.

Because of continuing pain, in May 1976 defendant again went to Dr. Gubler and received occasional treatments until March 1977, when Dr. Gubler referred him to a Dr. Beck. Dr. Beck diagnosed the defendant as having arthritis in his left wrist and referred him back to Dr. Lamb. In June of 1977, there was a plant closure at Kennecott; and at that time applicant again visited Dr. Lamb, who advised him that he needed surgery on his left wrist. It was performed on July 20, 1977. As a result thereof he was awarded three months temporary total disability $1,161.29 and $4,802.38 for permanent partial disability, plus his medical expenses and attorney's fees.

The instant application was filed May 18, 1977. The applicant does not contend that it was filed within three years after the accident, nor within three years after any "payment of compensation" in lieu of lost wages. His contention that it was filed within three years of the "last payment of compensation" is based solely on the proposition that Kennecott furnished medical services within that time as set forth herein. The Commission agreed with that contention and, in making the award, stated that

. . . the rendition of medical treatment by a physician whose services are paid for by the company constitutes the payment of compensation under the Workmen's Compensation Act and serves to extend the time within which a claim can be filed so that the claim filed by the applicant on May 18, 1977, was filed within three years from the date of the last compensation.

Kennecott raises no question as to its obligation to pay applicant's medical expenses, nor as to the fact that it has done so. It argues that the limitation of three years after the "last payment of compensation" contained in Sec. 35-1-99, quoted above, refers only to compensation paid in lieu of wages, and not to the payment of medical expenses.

The purpose of that statute, in common with all statutes of limitation, is that potential claims or controversies should sometime come to rest,[1] and thus enable employers and employees to get along in peace and good will without controversies hovering in the wings. There are other valid reasons for the requirement that such claims should be asserted within some reasonable and specified time. If an investigation is necessary, it can be made promptly while the evidence and the witnesses are available. This is a safeguard not only against possible fictitious or fraudulent claims, for real or imagined old injuries, but it also calls attention to any necessity that may exist for remedial steps to protect other employees from injury. Furthermore, the longer the period of limitation, the longer the employer must maintain records, and set up and carry reserves (or insurance), to take care of such possible claims. While the burden of the things just mentioned may initially appear to fall upon the employer (industry), it must be realized that they must also be borne by other workers, and ultimately by the public.

It is undoubtedly upon the basis of the foregoing considerations that the legislature has deemed it advisable to provide for the three-year limitation in the statute. Neither the advisability of such a statute, nor the time prescribed therein, is for determination by the Commission, nor by this Court. Their responsibility is to accept the law as enacted and to so interpret and apply it as to carry out its purpose.

It affords us no pleasure nor satisfaction to perceive it to be our duty to reverse an award to a workman who claims an industrial injury. Particularly so in awareness that it is generally recognized that the purpose of the Act is to alleviate the hardships that result from industrial injuries and that the Act should be liberally applied in favor

1. *United States Steel Corp. v. Industrial Commission*, 27 Utah 2d 145, 493 P.2d 986.

of coverage of the employee.[2] Nevertheless, we deem it to be required by our oath as judges to uphold the law, that we do so without partiality or favoritism, whether as to "rich or poor, humble or great."

■ In pursuing that objective, it is essential to have in mind that there is a distinct difference between "compensation" which is paid for an injury in lieu of wages which otherwise would have been earned, and the adjunctive award of medical and hospital expenses for treating the injury.

In support of his contention that the payment of medicals should be considered as the payment of "compensation" within the meaning of Sec. 35–1–99, applicant directs attention to certain sections of the Workmen's Compensation Act. The first of these is Sec. 35–1–45:

> Compensation for Industrial Accidents to be paid.—Every employee . . . who is injured . . . by accident arising out of or in the course of his employment . . . shall be paid such compensation for loss *sustained on account of such injury or death, and such amount for medical, nurse, and hospital services and medicines,* and in case of death, such amount of funeral expenses, as is herein provided.

■ The noteworthy aspect of that section is the provision for the payment of compensation <u>and</u> for such amount for medicals . . . etc. This imports that the medicals are something additional to and separate from the compensation for the injury and disability.

The second section referred to is Sec. 35–1–81 which in pertinent part states:

> Awards—Medical, nursing, hospital and burial expenses . . . *In addition to the compensation · provided for* in this title *the employer* or the insurance carrier *shall also be required to pay* such reason-

able sum *for medical,* nurse, and hospital services, and for medicines . . . as may be necessary to treat the patient . . . In case death results from the injury, . . . the employer or the insurance carrier to pay the burial expenses, in ordinary cases not exceeding the sum of $1,000. [All emphasis herein added.]

It will similarly be noted from the wording: "*In addition to* the compensation provided for" that that section also treats medicals as something different from the compensation in lieu of wages, and that it therefore does not support applicant's contention. It would be no more logical to regard the medicals as compensation than it would be to so regard the "funeral expenses" provided *for* in both of the just-quoted sections.

■ The reasons for making this distinction between compensation to be paid for loss of wages because of injury and disability, as contrasted to the payment for medical expenses in connection therewith, is that the law is firmly established that, once it is determined that there was an industrial accident, there is no limitation as to the time during which the medicals must continue to be furnished.[3]

Reverting to the applicant's argument in the light of what has just been said, it will be seen that if the furnishing of or payment for medical expenses by the company, which may continue indefinitely, were to extend the limitation in which a claim may be filed until three years after the last payment of such medical expense, that would completely nullify any effect to be given to Sec. 35–1–99, and thus defeat the legislative intent and the purpose of that statute. This would be contrary to a cardinal rule of statutory construction: that, if there is uncertainty or doubt as to the

**2.** See *M & K Corp. v. Ind. Comm.,* 112 Utah 488, 189 P.2d 132; *Askren v. Ind. Comm.,* 15 Utah 2d 275, 391 P.2d 302.

**3.** See *United States Steel Corp. v. Industrial Commission,* supra, note 1; *Kennecott Copper Corp. v. Anderson,* 30 Utah 2d 102, 514 P.2d 217, citing Larson's Workmen's Compensation Law, Sec. 61, pp. 88.225 et seq. to the effect that *payments for medical care* are not the same as "compensation" for lost wages and *not subject to the limitation* prescribed therefor and that orders to pay for medical expenses are interpretable as being "open end." See also cases therein cited.

meaning of statutes, they should be so interpreted and applied as to give meaning and effect to them both.[4]

 On the basis of our discussion herein, it is our conclusion that the furnishing of and payment for medical services to the applicant does not extend the statute of limitation and that his filing of his application more than three years after his alleged injury came too late. It is therefore necessary to nullify the award. No costs awarded.

MAUGHAN, HALL, WILKINS, and STEWART, JJ., concur.

4. 73 Am.Jur.2d, Statutes, Sec. 253.